The **BABEE-TENDA CORPORATION,** Babee-Tenda License Corporation, and Metropolis Bending Company, Plaintiffs,

v.

**SCHARCO MANUFACTURING CO., Inc.,** and David Scharaga, Defendants.

United States District Court
S. D. New York.
March 21, 1956.

Kenyon & Kenyon, New York City, for plaintiffs. John A. Reilly, Hugh A. Chapin, New York City, Oldham & Oldham, Akron, Ohio, Vern L. Oldham, Cleveland, Ohio, of counsel.

Victor M. Helfand, New York City, for defendants. Julius E. Foster, New York City, of counsel.

WALSH, District Judge.

The court states the basis for its determination as follows:

During the trial of this case the parties wisely decided to settle their differences on the basis of a consent decree which I am asked to approve, and which I do now approve. The effect of this decree will be to restrain the defendants from making any future use of the terms "baby tender" or "tender" in relationship to their products.

Due to the unusual nature of this case and because there seems to be an interest in the trade concerning the matter, I will set forth my reasons for approving this decree.

During the trial of this case there was introduced into evidence unusually extensive stipulations of fact which greatly narrowed the contested issues. A large number of documents, consisting in part of the advertising of the parties and the trade, and consumer advertisements and letters concerning the product involved, were introduced, in addition to the depositions of fact witnesses and witnesses familiar with trade practices. All of this evidence was extensively developed by opposing counsel in their statements to the Court, and in their briefs.

On the basis of this evidence, and what I have heard in Court, it seems to me that the contested issues here can be fairly easily resolved.

This is a suit for trade mark infringement and unfair competition. Plaintiffs' registered trade marks are "Babee Tenda" and "Tenda" applied to an article of juvenile furniture which is best described as a play table or feeding table. A play table resembles a small bridge table with a seat suspended in a well in the top of the table. It is a functional substitute for the ordinary high chair. Defendants make a similar item. Plaintiffs' use of their trade marks began in 1937 and defendants began to call their article the "Stay Put The Safety Baby Tender" in 1949.

Defendants allege that the term "Baby Tender" is descriptive or generic of the play table, and therefore, that they have the right to use the term to describe their product. In support of this the defendants introduced into evidence docu-

mentary proofs bearing on certain uses of the term "Baby Tender". I will first comment on these.

Apparently the term "baby tender" was used as early as 1860. It has been used sporadically since in connection with patented devices for the combined amusement and restraint of a child. There is no evidence that any of these patented devices were commercially available during the period of time with which this suit is concerned. None of these devices appear to be a play table.

The commercial use of the term "baby tender" seems to have been in connection with articles which are presently known as "walkers" and such commercial use seems to have ceased spontaneously in the early 1920's.

The term was also used commercially in connection with an article which is known today as a "stroller" and the use of the term "baby tender" in this connection ceased spontaneously in 1942.

As to the use in connection with the stroller, if it can rise to the level of a use, it was a very isolated matter and was not a matter of common or general use in the trade or by the public.

The only evidence of any substance which we have of this use in connection with the stroller is in the Sears Roebuck catalog. Some other catalog uses were produced by the defendants but they had all terminated long before the plaintiffs entered the field, and were of less extent than the Sears Roebuck catalog use. Answering the documentary evidence of the Sears Roebuck catalog use, we have the testimony of the Sears' buyer for the items in question that he, himself, was not aware that the stroller was termed a "baby tender" in the catalog, and that it was not so referred to by the trade or by consumers during the period of time in question.

The plaintiffs' article is not a development from either the walker or stroller, either functionally or structurally. The only similarity between plaintiffs' article, the play table, and either the walker or stroller is that all of them have a suspended seat, but that is not a significant similarity at all. The play table, so far as I can gather from what the parties have told me, and the evidence of record, developed as a substitute for the high chair, a safer thing to put the baby in, but an article which would also keep him in one place. Walkers and strollers are vehicles, play tables are not. Thus, the function of the walker and stroller is completely different than that of the play table. The articles have different descriptive properties.

Neither the plaintiffs nor the defendants knew of any of the above referred to "uses" of the term "baby tender" prior to the commencement of this suit.

This lack of knowledge on the part of all the parties hereto is strong evidence that the use of the term "baby tender" in connection with walkers or strollers found no response in the trade or amongst consumers. It must be remembered that both plaintiffs and defendants were in the furniture business since prior to 1930.

There is one other use of the term "baby tender" that has been developed by defendants' counsel, and that is that the Classification Board for the railroads did have a freight classification for "baby tenders" or for the combination "walkers, tenders or jumpers, baby".

The article for which this freight classification was created in 1901 seems to have been the old baby walker, which was a device that resembled an inverted peach basket with casters on the bottom and into which a child was placed so that it might push itself along the floor and learn to walk. This article is virtually extinct and the classification, I gather, was virtually unused from the early 1920's until someone inquired concerning this classification in the late 1940's.

After seeing a picture of the plaintiffs' article, which picture showed the trade mark "Babee Tenda", the Classification Board included this article, the play table, as something which can be shipped under the classification "baby tender".

I do not pass on the question of the validity of that ruling of the Classification Board for freight purposes at all. The only question in such proceedings is whether or not the shipping rate provided under such classification is discriminatory, that is, whether someone will be getting his article shipped at a different rate than his competitors. All I say is, and I find, that the Classification Board in doing what it did, simply put a new and completely different article under an old name and that it did so not on any basis of the general use of the words "baby tender" to describe the play table in the trade. As a matter of fact, we don't know what basis, if any, the Classification Board had for so including this completely different article under the old term.

In any event, the classification does not seem to have been known generally and it wasn't known to either the plaintiffs or the defendants before the plaintiffs began to use their term as a trade mark and before the defendants used the term "baby tender" on this article.

Actually, "baby tender", no matter how it is spelled, is not a generic term for the plaintiffs' article. The plaintiffs' article might be called a table-enclosed chair, or a play table, or a feeding table. This is not only the best description that I can think of for it, using normal words, but it also seems to be the description which the trade uses in describing this article and similar articles.

"Baby Tender" does not seem to be either a generic term or even a descriptive term for the article.

The plaintiffs were, apparently, the original distributors of the play table. They introduced it as a commercial article of juvenile furniture.

The plaintiffs first started to market their product in 1937 and since that time they have spent over a million dollars in the advertising of this product under their trade name "Babee Tenda" and "Tenda", and their primary method of marketing is to send door-to-door sales people to call upon mothers shortly after they have had a child and explain the product to them.

As a result of this advertising and this sales solicitation, the plaintiffs' trade mark has become well and favorably known and is associated with their article.

Indeed, I was shown an advertisement by a prominent New York department store of plaintiffs' play table that described it as—"the one, the only, the original" and as "the world famous Babee Tenda". The testimony of the Sears' buyer was that the term "Babee Tenda", regardless of how spelled, meant a play table made by the plaintiffs.

From the very beginning, plaintiffs used the terms "Babee Tenda" and "Tenda" as their trade marks and applied them to their goods. In doing so, they used the trade marks, with almost perfect consistency, in conjunction with a generic term describing the article. In other words, plaintiffs marked their product and advertised it as a "Babee Tenda table" or "Babee Tenda play table", or in some similar fashion. There is only one imperfection, that I can recall, in the record with respect to plaintiffs' consistent use of this term as a trade mark in conjunction with some apt descriptive or generic term. In the Railroad Classification Board exhibit, there was, apparently, a cut or picture of the plaintiffs' article which had the words "Babee Tenda" under it without any descriptive or generic term for the article. As far as the evidence in this case shows, plaintiffs' record is otherwise without blemish.

At the present time, there is substantial competition in the manufacture and sale of play tables. Many manufacturers other than the plaintiffs and defendants make and sell this article.

I do not believe that the record develops proof of any significant use of the term "baby tender", regardless of how spelled, as a generic term by the trade or by consumers. The trade, in its inquiries and its orders, in the overwhelming majority of cases, speaks of the article as a play table or feeding table or in some such descriptive way.

There is proof in the record of classified advertisements by consumers offering play tables or feeding tables of several other manufacturers for resale. These ads speak of the article as a play table or feeding table.

There has been no substantial use of the term "baby tender" in the trade as a descriptive term. There are some exhibits in the record which show that some of the defendants' customers, I think something like five out of two thousand, sometimes used the term "Baby Tender" when ordering the defendants' article, but this is such a small number that it really, merely emphasizes the fact that the trade has never accepted the term "Baby Tender", regardless of spelling, as a descriptive or a generic term for the article.

Coming to the defendants, they manufacture an article which is fundamentally similar to that of plaintiffs, and for a period of time from 1949 into 1952, defendants, in their packaging of the article and in their labels and in some advertising, used or referred to the article as a "Stay Put The Safety Baby Tender".

The defendants contend that they used the term "Baby Tender" as simply a descriptive term for the article to which the label was attached.

I find as a fact that the term did not describe the article and that it was not a generic term for the article, but the defendants did stop the use of this term when plaintiffs objected to it, and this litigation, regardless of the allegations of the complaint and the counter-allegations of the answer, has proceeded primarily in connection with future use and the future protection that the plaintiffs are to have with respect to this term.

Based on the proofs before me, it is my view that the term "Babee Tenda" is a valid trade mark and that the use of it, regardless of how spelled, in connection with an article similar to the plaintiffs' article, would infringe that mark and that the mark must be protected from such use. This also applies to the plaintiffs' mark "Tenda".

There has been no proof of bad faith on the part of defendants. The proof satisfies me that with reasonable promptness for a person who thinks he is right, the defendants stopped the use of this term after complaint was made by the plaintiffs, pending the outcome of this law suit, which was, I think, the proper way for parties to act under the circumstances.

On the basis of the record which has been made, I approve the settlement and the terms of the final decree submitted to me.

I approve it in substance on the basis of the findings which I, myself, have made from the record which seems to represent a great deal of industry on the part of both counsel.