The BABEE–TENDA CORPORATION, Babee-Tenda License Corporation, and Metropolis Bending Company, Plaintiffs,

v.

SCHARCO MANUFACTURING CO., Inc., and David Scharaga, Defendants.

United States District Court
S. D. New York.
Nov. 25, 1957.

584

Kenyon & Kenyon, New York City, for plaintiffs. John A. Reilly, Hugh A. Chapin, Mary V. Kelly, New York City, of counsel.

Victor M. Helfand, New York City, for defendants.

FREDERICK van PELT BRYAN, District Judge.

Plaintiffs have moved to hold defendants in civil contempt for violation of a writ of injunction issued by this court on May 18, 1956, pursuant to a consent decree, and for filing a false affidavit of compliance with the injunction.

The writ enjoined the defendant Scharco Manufacturing Corporation (hereafter referred to as "Scharco"), its officers, agents, servants, employees and attorneys, the individual defendant Scharaga, who is president of this corporation, and all persons in active concert or participation with them, who received notice of the injunction, "from using the terms 'Baby Tender' or 'Tender' in connection with the business of the Scharco Manufacturing Corporation, or the business of David Scharaga, or on, or in relation to, any product which the Scharco Manufacturing Corporation, or David Scharaga, makes or sells, or any term so similar to 'Baby Tender' or 'Tender' or to 'Babee-Tenda' or 'Tenda' as to be likely to cause confusion or mistake or to deceive purchasers." The writ also directed that defendants file a report as to compliance within 120 days after service of the writ, pursuant to § 34 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1116.

The action in which the writ was issued was for infringement by defendants of plaintiffs' registered trademarks "Babee-Tenda" and "Tenda" covering combined tables and chairs for infants and juveniles, by defendants' sale of similar articles under the trademark "Baby Tender" and for acts of unfair competition related thereto. The action proceeded to trial and during the course of trial the parties signed a consent decree in settlement of the contested issues. Judge Walsh, the trial judge, wrote an opinion approving the decree which gave his reasons for so doing. Babee-Tenda Corporation v. Scharco Manufacturing Co., D.C., 139 F.Supp. 909. He held that the plaintiffs' registered trademarks were valid and that the use of terms "Baby Tender" or "Tender", regardless of spelling, in connection with any similar article would infringe those marks.

The writ of injunction, issued pursuant to the consent decree, was duly served on the defendants Scharco and Scharaga, and on the office manager and the freight traffic consultant for Scharco on May 28, 1956. On September 14, 1956 defendant Scharaga, for himself and as president of Scharco, filed an affidavit in this court, as directed by the writ, stating that the defendants had complied with the provisions of the injunction.

On November 5, 1956 the plaintiffs served an order to show cause on a motion seeking to hold defendants for contempt for violation of the injunction and for filing a false affidavit of compliance. Plaintiffs alleged that motor trucks bearing the name "Scharco Mfg. Corp." and the words "Baby Tender" were operating in the metropolitan area in violation of the injunction. Plaintiffs asked that a fine be imposed on the defendants for the benefit of the plaintiffs to reimburse them for the costs incurred in the proceeding to punish for contempt, including the fees of their attorneys and for damages suffered by reason of the alleged violations.

Upon the argument of the motion before me counsel for the defendant asked for a hearing under Civil Rules 12(b)

and (d) of this court, and on March 25, 1957 I granted such a hearing. Thereafter such a hearing was held at which both sides presented evidence. The matter is now before me for decision on the basis of the evidence taken and the affidavits submitted by both parties upon the motion.

The facts are substantially as follows:

It appears that plaintiffs had been using the terms "Babee-Tenda" and "Tenda" in connection with their product since 1937, and since 1938 had spent over a million dollars in advertising these trademarks which were an important factor in their business.

Since some time prior to the institution of the action the defendants had used the words "Baby Tender" and "Tender" in connection with the sale of their somewhat similar juvenile products which represented some 15% of their business, and had widely circulated catalogues and literature using these legends. However, it appears that prior to the entry of the consent decree defendants had largely discontinued the general use of these terms in connection with its products and no longer considered them to be an important factor in their sales promotions.

Defendants delivered their products through Fusco Trucking Company, an independent trucking concern specializing in the delivery of juvenile furniture for various manufacturers. The products would be picked up by the Fusco trucks or trailers at the defendants' plant in Mt. Vernon and then were taken to the Fusco depot in the Bronx where they were reloaded in most instances upon trucks traveling various routes for delivery to stores and dealers in the metropolitan area which dealt in juvenile furniture. Fusco also transported the defendants' products interstate on long hauls under written contracts with the defendants.

The relationship between Scharco and its trucker had existed for some twenty years and was close and friendly. In 1950 or 1951 two of the some twenty trucks operated by Fusco and used in its deliveries had painted on them on both sides in large letters the words "Grow-Rite" "Scharco Mfg. Corp. Mt. Vernon, N.Y.", and underneath, the words "Baby Tender". This was done with the approval, if not at the instance, of defendant Scharaga, and the design was approved by him.

The two trucks of the Fusco fleet so marked were not necessarily used in the delivery of Scharco products, though on occasion they were. Generally the two marked trucks were used as an interchangeable part of the Fusco fleet engaged in making deliveries of products of the same general character as that produced by Scharco, to stores and other outlets.

Subsequent to the service of the writ of injunction these two trucks, with the legend upon them unchanged, and still bearing the words "Baby Tender", continued to operate, making deliveries in the metropolitan area in the same manner as previously. Though Fusco seems to have known of the injunction there is no evidence that any instructions were given to Fusco to remove the prohibited words from the trucks. Indeed, defendant Scharaga claims that he was unaware that the trucks had this lettering on them, though this is difficult to believe in view of the fact that he had directed and approved the lettering and design, and the indications that from time to time these very trucks came to the Scharco plant to pick up merchandise.

In any event, no steps were taken to have the offending legend removed from these trucks up to the time of the filing of the affidavit of compliance and for some time thereafter.

The order to show cause upon the present motion was served on defendants' counsel on November 5, 1956. Attached to the order to show cause, as part of the supporting papers, were photographs showing a Fusco truck with this legend on it, which had been taken shortly prior thereto. Whether or not defendants were aware prior to that time that the trucks so labelled were upon the streets,

it is plain that they were fully apprised after November 5, 1956.

When the motion was argued before me, some two weeks later, the trucks were still operating in the same manner and the offending words had not been removed. Thereafter there were some lackadaisical efforts on the part of the defendants to persuade Fusco to remove the offending words. Fusco made a half-hearted effort in that direction by placing masking tape over the words "Baby Tender", which not only was ineffectual to conceal the words but soon became detached. No further efforts were made by the defendants to follow this up, nor, as far as the evidence shows, did the defendant Scharaga, or any representative of the corporation, take the trouble to look at the trucks, to ascertain what, if anything, had been done with respect to them, or to take any steps to insure that the directions of the injunction were carried out even though the contempt motion was pending.

On April 3, 1957 counsel had a conference with me with reference to fixing a date for the hearing which had been afforded at defendants' request. At that time counsel for the plaintiffs advised counsel for the defendants in my presence that he was informed that the two trucks had been seen together in New Jersey with the legend still upon them, although there was still some torn masking tape affixed to one of them. I rebuked defendants' counsel for his clients' failure to comply with the injunction even after the contempt motion had been argued. Within twenty-four hours thereafter the offending words were completely painted out.

Thus, it is plain that, for the better part of a year after the writ of injunction had been served on the defendants, there were still two trucks bearing the name and address of the corporate defendant which carried the words "Baby Tender" in letters which could easily be read by the public, and that these trucks regularly operated in the metropolitan area, making deliveries to stores and dealers selling juvenile furniture. Regardless of whether defendants, as they claim, were unaware that trucks bearing the prohibited words were roaming the streets prior to November 5, 1956, when the motion papers were served, they certainly were fully apprised of the situation after that. Their conduct prior to November 5 may have been due to mere negligence and lack of diligence. Thereafter their failure to take proper steps to ensure compliance with the writ and to follow such steps up by vigorous action was so grossly indifferent as to be tantamount to wilful and deliberate failure to obey the order of the court.

It was also brought out at the hearing that defendants had continued to use the prohibited words "Baby Tender" on their bills of lading for a month and a half after the service of the injunction decree and up to July 7, 1956. Defendants claim that they were compelled to do this by reason of certain freight classifications made by the Interstate Commerce Commission. However, it is apparent that the defendants showed little diligence in attempting to correct this situation. Defendants issued no written instructions to their employees concerning the enforcement of the injunction. The continued use of the words on the bill of lading were known to key men in the defendants' organization who took little, if any, interest in seeing to it that the mandate of the injunction was promptly obeyed. However, since the defendants were permitted some period within which to adjust their practices to conform to the terms of the writ, it cannot be said with respect to this phase of the matter that the confirmation was more than unduly delayed. The evidence of failure to conform promptly, however, is a further indication of defendants' attitude toward the mandate contained in the writ, and their failure to take energetic steps to comply with its terms as they were required to do.

█ On these facts it is plain that the defendants violated the terms of the writ of injunction issued in this action and duly served upon them, at the least by permitting the two Fusco trucks to roam

the streets bearing language which the writ forbade them to use. I therefore find them guilty of civil contempt of this court for so doing.

■ Violations of an order of the court need not be wilful to constitute civil contempt. See Gillette Safety Razor Co. v. Wolf, C.C.S.D.N.Y., 180 F. 776; Telling v. Bellows-Claude Neon Co., 6 Cir., 77 F. 2d 584; Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 6 Cir., 230 F. 120; Metallizing Engineering Co. v. B. Simon, Inc., D.C.W.D.N.Y., 64 F.Supp. 848; Broderick & Bascom Rope Co. v. Manoff, 6 Cir., 41 F.2d 353. But cf., Edison Electric Light Co. v. Goelet, C.C. S.D.N.Y., 65 F. 612; Siegert v. Eiseman, C.C.S.D.N.Y., 157 F. 314. In a civil contempt proceeding good intentions, if they existed, cannot sterilize conduct otherwise contemptuous. Bigelow v. RKO Radio Pictures, D.C.N.D.Ill., 78 F.Supp. 250, 258. Nor will courts permit defendants to evade responsibility for violating an injunction by accomplishing substantially that which they were enjoined from doing through some allegedly independent vehicle or agent who is subject to their control. "Defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661.

■■ Neither the corporate defendant nor the individual defendant Scharaga can escape responsibility by taking the position that they did not know of the violations when, with reasonable diligence they should have known of them. This would be so even if the violations were committed in the face of firm and express orders to the contrary, which do not appear to have been issued here. They were required to take energetic steps to see that the orders of the court were carried out. They were required themselves to follow through and to take all affirmative steps necessary to comply with the court's directions. Gillette Safety Razor Co. v. Wolf, supra; Claude Neon Lights, Inc. v. American Neon Light Corp., 2 Cir., 39 F.2d 548; Telling v. Bellows-Claude Neon Co., supra.

Defendants' excuse that Fusco and Fusco Trucking Company are solely responsible for their failure to comply with the writ has no merit. In view of the close business relationship between defendants and Fusco there is no doubt that if defendants had insisted upon the offending words being painted out immediately this would have been done. Apart from the other evidence showing that this could have been accomplished, it is conclusively established by the fact that after the court on April 3, 1957 had admonished counsel for the defendants because of the failure of his clients to take steps to have the offending matter removed from the trucks, the matter was completely painted out within the next twenty-four hours.

■■ There remains to be considered the penalty to be imposed upon the defendants for their contempt of this court. In a civil contempt proceeding such as this penalties are confined to the actual damages suffered by the opposing parties from failure to comply with the injunction and their costs and expenses including counsel fees in investigating the violations and prosecuting the contempt. Such penalties are imposed on behalf of and for the benefit of the injured parties. In contrast to criminal contempt punitive damages may not be allowed. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389; U. S. Envelope Co. v. Transo Paper Co., D. C.D.Conn., 221 F. 79; Board of Trade of City of Chicago v. Tucker, 2 Cir., 221 F. 305; Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 6 Cir., 230 F. 120; Bigelow v. RKO Radio Pictures, D.C.N.D.Ill., 78 F.Supp. 250, affirmed 7 Cir., 170 F.2d 783.

In this proceeding plaintiffs claim to have suffered actual damages of $19,-681.20 by reason of the defendants' violations of the writ of injunction and to have expended or become obligated to

expend the sum of $5,987.23 in counsel fees and disbursements incurred in preparing for and prosecuting this contempt proceeding.

Plaintiffs' claim of actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture. Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 135 F. 774; Yanish v. Barber, 9 Cir., 232 F.2d 939, 944, and cases there cited.

As the Court of Appeals of this circuit said in the Christensen case, 135 F. at page 782:

"* * * It is obvious that a fine exceeding the indemnity to which the complainant is entitled is purely punitive, and, notwithstanding the foregoing precedents to the contrary, we think that when it is imposed by way of indemnity to the aggrieved party it should not exceed his actual loss incurred by the violation of the injunction, including the expenses of the proceedings necessitated in presenting the offense for the judgment of the court. We are also of the opinion that when the fine is not limited to the taxable costs it should not exceed in amount the loss and expenses established by the evidence before the court. Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision. * * *"

While the plaintiffs here may well have suffered damage from these violations, they have failed to establish by competent evidence the amount in which they were damaged. Their product was sold by salesmen who obtained lists of births, called at the homes of new parents and made direct sales to them. There was testimony that various potential customers may have seen the defendants' trucks upon the streets and may have noticed the words "Baby Tender" written thereon. Some potential customers commented on this. However, there were ten competitors of the plaintiffs selling similar articles by house to house call and articles serving comparable purposes could be purchased at various stores. There is insufficient in the record to show that any actual sales were lost merely because potential customers had seen the Fusco trucks passing on the streets or making deliveries, and it seems doubtful to me whether any such sales were lost for that reason. The estimate of the plaintiffs' dealer Weisman that he lost two sales a week and that the ten or eleven salesmen working for him probably each lost half of that number because potential customers had seen the words "Baby Tender" on a truck, is fanciful. It is insufficient to establish actual loss of sales.

Plaintiffs encounter a further difficulty in establishing monetary loss. Weisman, plaintiffs' sole witness on the question of damages, testified that he was a dealer and not a salesman—that is to say that he purchased the product from the defendant and sold it at a fixed price for his own account. The difference between the price of $26.65 which he paid for the "Babee-Tendas" and the sales price of $43.95, was the salesman's profit or commission. Plaintiffs arrive at their damage figure of $19,681.20 by multiplying the number of alleged lost sales per week by the number of salesmen in the field and in turn multiplying that figure by $17.30, the amount of the salesman's or dealer's own profit. Even were this figure to be accepted as accurate it would not represent any loss to the plaintiffs since the profit on the sale went into the pocket of the salesman and did not accrue to plaintiffs. The salesmen are not parties to this proceeding, nor is it brought for their benefit. There is nothing in the record to show what the plaintiffs' loss of profits was if there were such loss of profits. Since plaintiffs have failed to show the amount of any actual damage the fine to be imposed here cannot include indemnity for any such damage.

However, plaintiffs' claim for expenses and counsel fees in preparing for and

prosecuting the motion for contempt in the amount of $5,987.23 is on quite a different footing. Plaintiffs submitted a detailed affidavit showing the services rendered by their attorneys upon this motion, and their disbursements. The hourly charge slips of all of plaintiffs' attorneys who have worked on the matter are attached and the disbursements are itemized. Some bills for services rendered have already been paid by the plaintiffs and others, though not yet rendered, have been incurred. The time spent, while large, is not unreasonable and the hourly charges for the time of partners and associates is consonant with the standards prevailing in the practice of law in this city. The disbursements all seem to have been properly incurred and were reasonable in amount.

The issues involved were plainly of great importance to the plaintiffs since their trademarks were a major element of their business and they had invested sums in excess of a million dollars in advertising their trademark product. Indeed, subsequent to the entry of the consent decree plaintiffs had advertised the outcome of the case in trade magazines so as to apprise those in the field that the trademark was their exclusive property, as they were authorized to do by the terms of the decree. The results obtained not only disclosed that serious violations of the writ were daily occurring but stopped such violations. Defendants' conduct in committing these violations was quite inexcusable.

I find that the plaintiffs have necessarily and properly incurred the sum of $5,987.23 in attorneys' fees and disbursements in preparing and prosecuting this motion to punish for contempt.

One further matter should be disposed of. Plaintiffs claim that defendants were guilty of contempt in failing to produce at the hearing on this motion the bills of lading used subsequent to the service of the injunction and up to July 7, 1956, which had the words "Baby Tender" stamped upon them, in response to a subpoena calling for "all documents or other writings containing these words used subsequent to May 18, 1956." In view of the admission of defendants' employee, Cooper, that all of defendants' bills of lading for this period contained this legend, it is difficult to see what damage the failure to produce these documents caused to the plaintiffs or what effect such failure had upon the course of the proceedings. I do not find defendants guilty of contempt on this score.

A fine is imposed upon the defendants in the sum of $5,987.23 for the benefit of the plaintiffs to indemnify the plaintiffs for expenses incurred by them by reason of the defendants' violations of the writ of injunction issued in this action in contempt of such writ. The facts and rulings of law stated in this opinion shall constitute my findings of fact and conclusions of law upon this motion.

Settle order on five days' notice.