## CALIFORNIA FRUIT GROWERS EXCHANGE v. SUNKIST DRINKS, Inc.

District Court, S. D. New York.
May 31, 1933.

George E. Farrand and Leonard S. Lyon, both of Los Angeles, Cal., and George F. Scull and Edward S. Rogers, both of New York City, for plaintiff.

Ludwig M. Wilson, of New York City (Henry Van Arsdale, of New York City, of counsel), for defendant.

COLEMAN, District Judge.

In 1907 the plaintiff, the California Fruit Growers Exchange, adopted as a trade-mark the word "Sunkist" in the marketing of fresh citrus fruits throughout the country, and established rigorous standards of quality for all sold under that brand. The word has not only been featured in advertising, but has been printed prominently on containers, on wrappers, and even on the individual pieces of fruit. About $17,000,000 has been expended in advertising the brand and the sales approximate $100,000,000 a year, aggregating about $2,250,000,000 for the entire period. The result is that the word has become one of the best known trade-marks in this country, and in the public mind stands for citrus fruits of a uniformly high quality, though of the California variety.

In 1923 the defendant under its corporate name, Sunkist Drinks, Inc., commenced the manufacture and sale in New York City of a variety of bottled carbonated beverages including cream soda, ginger ale, sarsaparilla, orange soda, lemon soda, and lemon and lime soda. The citrus flavored sodas constitute about 15 per cent. of defendant's product and are merely imitation in that they contain no part of the fruit, but only artificial coloring and a synthetically prepared flavoring which resembles that of the fruit. The corporate name appears on the labels, the metal caps, the boxes, and in the glass of the bottles; and as printed the word "Sunkist" is the dominant factor in it. On the bottles of citrus

flavored sodas the word "imitation" appears prominently on the labels and metal caps. As the business is conducted the defendant sells its product directly to candy and delicatessen stores, luncheonettes, and other establishments where the customer usually selects the bottle from an assorted case of them and drinks its contents on the premises.

It seems to me that defendant's use of the word "Sunkist" in connection with the citrus flavored sodas is unfair in that it would give an ordinary purchaser the impression that they were either made from the well-known "Sunkist" fruit or under the auspices of the owner of that brand. The word has been so thoroughly identified with the plaintiff's product in the mind of the public that wherever it appears the first thought it calls to the ordinary mind is an orange of the advertised brand. An orange-flavored and orange-colored drink is generally assumed to have been made from oranges and when the word "Sunkist" is applied to it there would be a strong tendency to suggest the thought that the beverage was in some way connected with "Sunkist" oranges, and would probably lead to deception. This would be somewhat less true of the lemon and lime drinks, but the result would be substantially the same. Defendant contends that its use of the word "imitation" precludes the false assumption that the drink was made from real fruit and that the plaintiff's product entered into it. While this would probably be true in the case of a careful, intelligent purchaser, the effect would not be complete with the unwary.

As applied to cream soda, ginger ale, and other noncitrus drinks, the word would not have the same deceptive tendency. The plaintiff deals exclusively in citrus products and has never dealt commercially in bottled beverages. "Sunkist" is no part of its corporate name and is not identified in the public mind with the plaintiff but with its line of whole fresh citrus fruits. These facts would not prevent deception when the word is applied to an orange drink because of the assumption that the drink was made from oranges and, probably, from "Sunkist" oranges. But there is no connection whatever between cream soda or ginger ale and oranges or lemons nor is there anything to suggest the plaintiff or its products except the mere use of "Sunkist" in application to merchandise entirely foreign to the plaintiff's business. The word is not artificial or fanciful and is largely used in trade-marks and trade-names in other lines of business; and

unless in the merchandise marketed under it there is something to suggest citrus fruits the plaintiff has no ground of complaint.

This suit was not brought till 1931, eight years after the defendant had adopted its name and commenced to build up a business under it. The plaintiff in the meantime had made no objection except shortly before bringing the suit, but on the contrary, one of its departments had corresponded with the defendant in an effort to sell some products to be used in the manufacture of the orange drink. The delay, however, was not willful, because the men in authority in the plaintiff's large organization had no knowledge of the defendant's use of the name, and the fact that the sales department sent a circular letter to the defendant is immaterial. Defendant has only a small business, entirely local, and it does no advertising. Under all the circumstances it seems to me that the delay should not bar all relief, but that it should be considered in determining what relief to award in view of the serious damage which might result to the defendant from having been allowed to build up a good will under its name for a period of seven or eight years. The fact that plaintiff has permitted another concern to market an orange drink under the word "Sunkist' in another territory and under strict supervision and regulation is immaterial.

The defendant must cease using the word "Sunkist" on citrus flavored drinks in a manner which might lead to misapprehension as to the relation of the plaintiff or its product. In view of the defendant's established business, it would be an undue hardship to require that the citrus flavored drinks be marketed under a new name different from that for the other drinks, and the plaintiff can be fully protected by having the purchasers informed that though the orange, lemon, and lime drinks are made by "Sunkist Drinks Inc.," the plaintiff had no connection with them and "Sunkist" fruit was not used in them. This might be accomplished by eliminating the word "Sunkist" from the metal caps of the citrus drinks and putting a label or other form of statement on those bottles to the effect that the drink was not made by the California Fruit Growers Exchange nor from "Sunkist" oranges, lemons, or limes, as the case might be. The exact provisions may be determined on a settlement of the final decree which is directed in accordance with this opinion, without costs to either party.