## CALIFORNIA FRUIT GROWERS EXCHANGE v. SUNKIST DRINKS, Inc.

District Court, S. D. New York.
Sept. 12, 1938.

Gifford, Scull & Burgess, of New York City (Edward S. Rogers, of New York City, of counsel), for plaintiff.

Ludwig M. Wilson, of New York City, for defendant.

PATTERSON, District Judge.

The application is one by the plaintiff to have the defendant held in contempt for violation of the injunction granted in this case, and also to have an order modifying the injunction vacated.

■ In 1931 the plaintiff, a California corporation engaged in marketing oranges and other citrus fruits, brought suit in equity in this court against the defendant, a New York corporation engaged in selling bottled carbonated beverages. The suit was based on alleged infringement of the plaintiff's trademark Sunkist and also on unfair competition, and an injunction was asked for. After trial on the merits before the late Judge Coleman, he rendered an opinion (D. C., 3 F.Supp. 496) to the effect that the word Sunkist in connection with citrus fruits was a trademark signifying to the public the products marketed by the plaintiff, and that the defendant's use of the word on citrus flavored beverages, though not on other beverages, constituted unfair competi-

tion; that the plaintiff's delay in enforcing its rights, while not so serious as to bar relief altogether, had continued long enough to affect the relief to be given; that in view of the delay the defendant might continue to market citrus flavored beverages under the Sunkist name, provided it put on the bottles a label to the effect that the drink was not made by the California Fruit Growers Exchange nor from Sunkist oranges, lemons or limes, the exact provisions to be determined on settlement of final decree. The decree, signed September 25, 1933, enjoined the defendant (1) from using the word Sunkist apart from its corporate name on citrus flavored drinks or imitations of such drinks, (2) from using the word Sunkist in any fashion on caps of bottles of such drinks, and (3) from using its corporate name, Sunkist Drinks, Inc., on any bottles of such drinks "unless there is displayed as prominently and clearly on those bottles and containers a label or other form of statement to the effect that the drink was not made by California Fruit Growers Exchange and is not made from 'Sunkist' oranges, lemons or limes as the case might be." The decree gave leave to either party to apply for further relief at the foot.

Two months later the defendant moved to modify the decree. The defendant represented by affidavits that difficulty had been met in making paper labels adhere to its bottles of the smaller type, due to embossing on the surface. These bottles bore no labels, but had the words "Sunkist Drinks, Inc." blown into the glass without use of colors. And the defendant asked that the decree be modified so as to permit it to place on the caps a statement that the drink was not made by the California Fruit Growers Exchange and was not made from Sunkist oranges, lemons or limes. The motion was granted, and by order of December 8, 1933 the court modified the decree to provide that nothing in it should restrain the defendant "from placing on the caps or crowns of bottles or containers of citrus flavored or imitation citrus flavored drinks a label or other form of statement to the effect that the drink was not made by the California Fruit Growers Exchange and is not made from Sunkist oranges, lemons or limes, as the case might be." It will be noted that the modifying order, read literally, did not relax the decree beyond permitting the word Sunkist to appear on caps and then only as part of the explanatory phrase. But the intent and purpose of the court in making the modifying order was doubtless to give more leeway to the defendant than the literal meaning would indicate. The modifying order, as the papers on which it was based show, was intended to meet the problem presented by the defendant's small bottle, on which the words Sunkist Drinks, Inc., were blown into the bottle itself, and to which a paper label did not readily adhere. The decree as it stood forbade use of these bottles unless the explanatory statement appeared "on those bottles" as prominently and clearly as the name. Rather than require the defendant to throw the bottles away, the court decided to permit their use, provided the required explanatory statement was placed on the cap in lieu of on the bottle. The advantage to the defendant in saving its bottles was obvious, while the plaintiff's rights as fixed in the decree were not materially impaired. The words on the bottle, Sunkist Drinks, Inc., though large, were not readily caught by the eye because there was no color contrast between them and the rest of the bottle, and the explanatory legend on the cap was as prominent and clear, though not as large, as the defendant's name on the bottle. The relief sought was within the spirit of the original decree. The net effect was that the defendant was under injunction from placing its name on bottles of citrus flavored beverages unless the explanatory statement was placed as clearly and prominently on the bottles, with the proviso that on the type of bottles then in use the explanatory statement might be placed on the caps instead of on the bottles. The plaintiff has accorded to the modifying order a meaning as broad as this and makes no complaint of the continued use of the old bottle.

By the moving papers on this application it is shown that in February, 1937 it came to the plaintiff's notice that the defendant was selling citrus flavored beverages in a new bottle. The defendant says that this bottle was adopted in 1935. The bottle is of smooth glass and bears two paper labels on the side. The upper label bears the words "Sunkist Drinks, Inc. Orange Soda," in large characters and contrasting colors. It does not carry the explanatory statement. The lower label bears the words "Sunkist Drinks" and "Orange Soda" in large type; it also bears the explanatory words "not made by California Fruit Growers Exchange nor from Sunkist oranges", but in very small type. The moving papers further show that in April, 1938 the plaintiff discovered the sale

by the defendant of citrus flavored beverages in still another type of bottle, said by the defendant to have been adopted in 1937. With this last bottle the labels are enamelled in the glass. They bear the words "Sunkist Drinks" in large type. There is a color contrast that catches the eye and gives prominence to the words. The explanatory words required by the decree are omitted from the labels altogether; they appear only on the caps, in fine type.

There is not the slightest doubt that the defendant, by the use of these new types of bottles, has violated the decree of this court as it now stands. The trespass on the plaintiff's rights is far more flagrant than it was prior to the decree, the defendant having given increasing prominence to the word Sunkist since the decree. It has become the dominant word on the bottle. The other words in the defendant's name, Drinks, Inc., are shown in diminished size, and the explanatory clause, whether on the label or on the cap, is made utterly insignificant. The decree required that if the defendant continued to use the words "Sunkist Drinks, Inc." on bottles, the phrase dissociating the defendant from the plaintiff and from Sunkist fruit be displayed "as prominently and clearly" on the bottles, with the modification that with the old type of bottle the dissociating phrase might be put on the caps. The breach of this provision of the decree by the use of the new bottles is too plain to call for detailed discussion.

The defendant contends that under the modifying order all that was required of it was to place the explanatory phrase on the caps of bottles. The argument comes to this, that the defendant might place its name, Sunkist Drinks, Inc., on bottles as prominently as it saw fit, either by paper label or by enamel, so long as the explanatory clause was inconspicuously placed on the caps. No such freedom was given by the modifying order, whether read literally or read in the light of the papers on which it was made.

The defendant also relies on laches. There has been no laches on the plaintiff's part. It made objection promptly after receiving knowledge that the defendant was at it again. The fact that the plaintiff made mistakes as to its remedies prior to bringing the present application created no vested right in the defendant to violate the decree.

There will be an order adjudging the defendant in civil contempt for violation of the decree as modified and sending the case to a special master to take proof as to the plaintiff's expense and damages in order that an appropriate fine may be imposed.