LEONARD ALVES & others *vs.* TOWN OF BRAINTREE
& others.

Norfolk.    March 10, 1960. — May 3, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Contempt. School and School Committee. Municipal Corporations,* Municipal finance, Officers and agents. *Public Officer. Equity Pleading and Practice,* Contempt proceeding, Appeal, Proceeding respecting support of public schools.

A contempt proceeding for disobedience of a decree in equity was a civil proceeding where the respondents were called as witnesses by the petitioners and testified and a decree adjudging the respondents in contempt contained a statement that the proceeding was civil, so that it was error to impose fines on the respondents under G. L. c. 280, § 2, and the pro-

---

[1] We infer that this was the preliminary injunction referred to in the first case.

ceeding properly came before this court on an appeal by the respondents from the contempt decree.    [9]

In G. L. c. 71, § 34, as amended by St. 1939, c. 294, directing that the sums ordered by a decree in equity to be provided by reason of a determination of a deficiency in school appropriations be raised by taxation or borrowed depending on whether the decree is entered before or after "the fixing of the annual tax rate," the reference is to the fixing of the tax rate in the year in which the deficiency occurs.    [11]

In a suit against a town and certain of its officers under G. L. c. 71, § 34, as amended by St. 1939, c. 294, a decree entered in March, 1959, before the tax rate of the town for 1959 was fixed, establishing the amount of a deficiency in the 1958 school appropriations of the town and ordering borrowing of that amount to meet the deficiency, together with twenty-five per cent thereof to be held by the town as a separate fund to meet school appropriations for 1959, was not complied with where it appeared that there was no borrowing, that immediately after the entry of the decree the town accountant set up the total of the deficiency and the twenty-five per cent in an account on the books "as ordered by" the decree and notified the assessors to provide the total by taxation, which they later did in fixing the 1959 tax rate, and that a few days after the establishment of such account the town at its annual town meeting voted that the total be "transferred" from such account to meet in part the school appropriations for 1959.    [11]

A finding that the assessors of a town "aided, supported and abetted in . . . [a] wilful and contumacious disobedience of" a decree entered in a suit under G. L. c. 71, § 34, as amended by St. 1939, c. 294, ordering that sums to be provided by reason of a determination of a deficiency in school appropriations be borrowed was plainly wrong on evidence that, although there was no borrowing, all that the assessors did was to include the total of such sums in fixing the tax rate pursuant to notice from the town accountant that such total had been set up in an account on the books "as ordered by" the decree and should "be provided for by taxation."    [11–12]

Where, in a suit under G. L. c. 71, § 34, as amended by St. 1939, c. 294, a decree was entered ordering a town's treasurer and selectmen to provide by borrowing certain sums by reason of a determination of a deficiency in school appropriations, the treasurer and selectmen should not be held in contempt because they refrained from borrowing such sums in reliance on advice of the town counsel that in the circumstances they should be raised by taxation, and a decree adjudging the treasurer and selectmen in contempt must be reversed, even though this court decided that the borrowing was required; it was not to be assumed that the treasurer and selectmen would not carry out their duty of borrowing after this court's decision.    [12]

CONTEMPT PETITION filed in the Superior Court on June 26, 1959.

The case was heard by *Wisnioski*, J.

*Robert J. DeGiacomo, (Richard A. Hunt,* Town Counsel, with him,) for the respondents.

*A. Kenneth Carey, (Donald E. Carey* with him,) for the petitioners.

*Charles W. Davis,* by leave of court, submitted a brief as amicus curiae.

WILKINS, C.J.   On March 16, 1959, a final decree was entered in the Superior Court in a suit by ten or more taxpayers establishing under G. L. c. 71, § 34 (as amended through St. 1939, c. 294), that the deficiency in the amount necessary for the support of the public schools in the town of Braintree for the year 1958 was $20,550, and ordering the town, its treasurer, selectmen, and assessors to provide that sum by borrowing, as provided in § 34, to meet the deficiency, together with the further sum of $5,137.50, representing twenty-five per cent of the amount of the deficiency, to be held by the town "as a separate account to be applied to meet the appropriations for school purposes in the following year," as provided in § 34.   This petition for contempt, filed on June 26, 1959, in the Superior Court, asked for a citation against the treasurer, the assessors, and the selectmen, but not against the town, charged that the respondents had failed to comply with the decree, and prayed that they be adjudged in contempt.

After hearing, the trial judge on July 30, 1959, entered a final decree adjudging the respondents and the town in contempt in that they "have wilfully and contumaciously refused to comply with the order of the court . . . and have failed to show any reasonable excuse or justification for such actions."   Fines to be paid in accordance with G. L. c. 280, § 2 (as amended through St. 1953, c. 319, § 37), were assessed as follows: upon the town $500, and upon the treasurer and each of the three selectmen $100.   The decree also adjudged the three assessors to be in contempt in that they "aided, supported and abetted in the wilful and contumacious disobedience of the order of the court," and postponed sentence pending further proceedings.   An appeal on behalf of "Town of Braintree and all other re-

spondents'' was filed by the town counsel. The evidence is reported. A single justice of the Supreme Judicial Court suspended the operation of the contempt decree. G. L. c. 214, § 22 (as amended through St. 1948, c. 309).

1. In order to foreclose judicial consideration of the merits, the petitioners contend that the contempt was criminal and hence not properly here on appeal under G. L. c. 214, § 19. This they do notwithstanding the trial judge's statement in the final decree that the case was heard and acted upon as a civil contempt. This they do also notwithstanding the fact that the individual respondents were called to the witness stand by the petitioners and testified. This would have been a violation of their constitutional rights in a trial for criminal contempt. Art. 12 of the Declaration of Rights. *Emery's Case,* 107 Mass. 172, 182–185. *Brown* v. *Commonwealth,* 335 Mass. 476, 482–483. Fifth Amendment to the Constitution of the United States. *Boyd* v. *United States,* 116 U. S. 616, 632–635. *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 444, 447–448. The basis for the petitioners' contention is that fines were imposed under G. L. c. 280, § 2, which provides for payment to the county treasurer, and no part of the fines was to be paid to the petitioners. See *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 347–348, and cases cited; *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 441–448; *Penfield Co. of California* v. *Securities & Exch. Commn.* 330 U. S. 585, 595. Compare *Commonwealth* v. *McHugh,* 326 Mass. 249, 276–277. For present purposes we accept as correct the petitioners' argument that fines payable to the county treasurer in no part for the benefit of the petitioners[1] cannot be imposed in civil contempt, and we thus conclude that the fines were improper. We prefer this result to a rejection of the judge's statement as to the nature of the contempt and which necessarily would amount to a decision that there had been a violation of constitutional rights. We hold that the appeal is properly here.

[1] No question as to the appropriateness of a fine for the benefit of petitioners who are taxable inhabitants is presented.

2.  Other than the recitals in the contempt decree the trial judge made no findings. Accordingly, we must find the facts ourselves. This we do on undisputed evidence. When the deficiency decree was entered on March 16, 1959, the tax rate for that year had not been fixed. No funds were borrowed, but on March 19 the town accountant advised the board of assessors in writing: "I have set up in the Town of Braintree books an amount of $25,687.50 as ordered by a final decree of Superior Court in Equity #64521 against the Town of Braintree, which in accordance with the town counsel's opinion is to be provided for by taxation." No expenditures were made from this account, and no one else was notified. At the annual town meeting on March 23 it was voted to meet the appropriation for the support of the schools in 1959 in part by transferring $25,687.50 from this account. This portion of the vote was "that $20,550 be transferred from funds available for support of the public schools for the year 1958, said fund having been created by virtue of a final decree in the Norfolk Superior Court, Equity No. 64521, requiring the town to raise said sum to meet the deficiency in the 1958 appropriation, $5,137.50 be transferred from additional funds provided under the foregoing decree . . . ."

3.  Next we consider the statute, G. L. c. 71, § 34 (as amended through St. 1939, c. 294), pursuant to which the final decree of March 16, 1959, establishing the deficiency was made. Upon petition the Superior Court "may determine the amount of the deficiency, if any, and may order . . . such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof. When such an order is made prior to the fixing of the annual tax rate the foregoing sums shall be required by such order to be provided by taxation in the manner set forth in section twenty-three of chapter fifty-nine; and when such an order is made after the annual tax rate has been fixed according to law such sums shall be required by such order to be provided by borrowing in the same manner and for

the same period of time as is provided under clause (11) of section seven of chapter forty-four in the case of final judgments . . . in the case of a town, such borrowing shall be made by the town treasurer, with the approval of a majority of the selectmen, and no vote of the town shall be required therefor. Said court may order that the sum equal to the deficiency be appropriated and added to the amounts previously appropriated for the school purposes of such . . . town in the year in which such deficiency occurs and may order that the amount in excess of the deficiency be held by such . . . town as a separate account, to be applied to meet the appropriation for school purposes in the following year.''

The distinction made in § 34 between meeting a deficiency by taxation before the fixing of the annual tax rate[1] and by borrowing thereafter has reference to the fixing of the tax rate in the year in which the deficiency occurs. Here the deficiency was in the appropriation for 1958, and the penalty was applicable to the appropriation for 1959. The statute twice refers to ''sums'' and not ''sum,'' and contemplates that if the deficiency should be determined, as it was, after the annual tax rate for 1958 was fixed, both sums are to be borrowed. The act of the town accountant in setting up on the books of the town of an account which existed from March 19, 1959, until voted out of existence four days later was not a compliance with a decree which required borrowing. See *O'Brien* v. *Pittsfield,* 316 Mass. 283, 287; *Watt* v. *Chelmsford,* 323 Mass. 697, 701–702.

4. The assessors have nothing to do with borrowing, and they must have been included in the statute so that they might take appropriate action in a case where a deficiency

---

[1] Parenthetically, we note the extreme unlikelihood of such a case. The deficiency would probably be the result of failure to appropriate at an annual town meeting, which, varying with the town and the year, would usually adjourn in February, March, or April. To commence a suit, get it tried, and a final decree entered in the Superior Court, even without an appeal to this court, before the fixing of the tax rate would require unusual, if not unprecedented, speed. The statutory goal for sending out bills for real and personal property taxes is June 14. These are payable July 1, and carry interest after November 1 from October 1. G. L. c. 59, § 57, as amended. We know that it has not always been possible to fix a tax rate before July 1.

is determined prior to the fixing of the annual tax rate. Undoubtedly anyone, whether a party or not, who counsels or aids a party in disobeying a decree is himself punishable. *Commonwealth* v. *Hudson,* 315 Mass. 335, 347. Here the finding that the assessors "aided, supported and abetted in the wilful and contumacious disobedience of the order of the court" is wholly unsupported in the reported evidence and is. plainly wrong. Certainly including the result of the town meeting appropriations in their work sheet and fixing the 1959 tax rate upon that basis are not such conduct.

5. The town treasurer and the selectmen all acted pursuant to the advice of the town counsel. Of course, this fact does not dispense with compliance with the decree requiring borrowing, but it is of decisive effect in determining what disposition to make in the contempt proceedings. We frequently have refused to assume that public officers would not carry out their duty under the law once that law has been judicially declared. See *Times Film Corp.* v. *Commissioner of Pub. Safety,* 333 Mass. 62, 63, and cases cited. This analogy is now pertinent. Section 34 leaves much to be desired in the way of clarity, and the mere circumstance that the law has been declared in a petition for contempt rather than in advance of action by a bill for declaratory relief or some other proceeding should not require a harsh result. The individual respondents were not morally reprehensible to any greater extent than may have been a defeated party in a trial by combat centuries ago.

6. We need not spend time to determine whether the respondent town was a party to the contempt proceedings before it appealed from the decree. See *Commonwealth* v. *Hudson,* 315 Mass. 335, 338.

7. Our present duty does not lead us to determine what should happen to money provided by borrowing in 1960 to satisfy a deficiency in the 1958 appropriation and a penalty applicable to the 1959 appropriation.

8. The final decree of July 30, 1959, is reversed. The case is remanded to the Superior Court, where further application to adjudge in contempt may be made if within a

reasonable time there is no compliance with the final decree of March 16, 1959.

*So ordered.*