**AMERICAN OPTICAL CORPORATION, Plaintiff,**

v.

**AO INDUSTRIES, INC., Defendant.**

Civ. 1969–179.

United States District Court
W. D. New York.

Oct. 20, 1969.

Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y. (John H. Stenger, Buffalo, N. Y., of counsel), Amster & Rothstein, New York City (Morton Amster, New York City, of counsel), for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y. (Robert M. Hitchcock, Buffalo, N. Y., of counsel), Finnegan, Henderson & Farabow, Washington, D. C. (Ford F. Farabow, Jr., Washington, D. C., of counsel), for defendant.

CURTIN, District Judge.

By order dated September 16, 1969, this court directed the defendant to show cause why it should not be cited for contempt of the preliminary injunction issued on June 6, 1969.

Plaintiff complains that one of defendant's subsidiaries is distributing the 1968 Annual Report of AO Industries, Inc. together with other sales promotional literature of its subsidiary, in clear violation of the preliminary injunction which states:

"The defendant and its officers, agents, employees and attorneys, and those persons in active participation with them * * * are restrained from directly or indirectly using or inducing others to use the symbol 'AO' as a trademark, trade name, trade symbol, or in any connection with the sale of goods or services. However, nothing herein shall restrain defendant from using the symbol 'AO' as its designation for trading on the American Stock Exchange, or from

using the letters 'AO' as part of its corporate title."

A short recounting of the history of this case to the date of the alleged contempt sheds considerable light on the meaning and extent of the restraint imposed upon the defendant by this court's preliminary injunction.

The language of the temporary restraining order, as originally granted on May 22, 1969, broadly enjoined the defendant from using "the symbol 'AO' as a trademark, trade name, trade symbol, or as part of a corporate title."

The next day defendant asked the court to modify the restraint imposed by deleting the words "as part of a corporate title" and inserting instead "in any connection with the sale of goods or services." Defendant's local counsel explained that the defendant was a management holding company which has a group of subsidiary operating corporations who market their goods and services under their own trade names and trademarks. He further explained that defendant's present corporate title, AO Industries, Inc., had recently been changed from Associated Oil and Gas Co. so that financial interests and potential investors in the holding company could identify the defendant with the symbol "AO." "AO" had been the corporate designation of the defendant for trading on the American Stock Exchange for about eleven years. Finally, he pointed out that restraining the defendant from using "AO" as part of its corporate title crippled its operation at the holding company level. Counsel for defendant made this claim even though activities at this level did not include the sale of goods or services which might compete with the goods and services sold by the plaintiff. With all this in mind, this court granted the requested modification and inserted "in any connection with the sale of goods or services."

At the hearing on the motion for a preliminary injunction, plaintiff's counsel urged the court to issue a preliminary injunction with the same force and effect as the modified temporary restraining order. He continued:

"* * * In making this suggestion to the Court, [plaintiff] wish (sic) to make it quite clear that ultimately it will be American Optical's position that defendant has absolutely no right to use the trade name 'AO Industries, Inc.' for its conglomerate activities.

We suggest this, your Honor, for two reasons. First, when your Honor goes through the opposing papers you will appreciate that they have made virtually no use of the trade name 'AO Industries, Inc.,' in connection with the sale of products or the offering of services. Their use concededly to date involves the trading of that stock on the American Stock Exchange, some limited franchising activity, and I would presume the general correspondence that goes on in a holding company.

Thus, if your Honor carries forward with the temporary restraining order as modified, you essentially could do no irreparable harm and damage to the defendant and you would be preserving the status quo."

Later during the course of this same hearing, attorneys for the defendant corporation made various representations to the court explaining what the "status quo" was and what the defendant's intentions were with respect to future use of the symbol "AO." At one point, James Farrell, General Counsel of the defendant, explained the defendant's advertising policy:

"As to the advertising, we have no intention of tying the AO name directly or indirectly to any products or services."

Later, Mr. Farrell stated:

"* * * There is no intention of making a wholesale change of well-established trademarks that have been built up by these various [subsidiary] companies. It would be foolish to try and create a new trademark symbol for companies that have been well-

established. I mean that just doesn't make any sense. That is not the philosophy of our company. We are a small management company. Our only identification with the public is with the investment public and of course we have identification with financial banks, the SEC and so forth, but the only identification is to our stock and that is the way we intend to keep it from a corporate philosophy standpoint."

Thereafter, Marcus Finnegan, a member of the law firm representing defendant here, further elaborated:

"Defendant's corporate name, AO Industries, is not presently used in connection with the sale of any goods or service except, as has been mentioned in one of the affidavits, in a minor way in the franchising of houseboats and there it was just used to give the potential franchisees the knowledge that there was a major company behind its franchising operation. It was not used in any sense as a mark for the houseboats themselves or any services offered by the houseboats or the franchising operation as such."

The court, in granting a preliminary injunction, accepted the suggestion of plaintiff's counsel to maintain the status quo and relied upon the representations made by defendant's counsel to determine what the status quo was. In an attempt to explain its reason for maintaining the restraint imposed by the modified temporary restraining order in its preliminary injunction, the court stated in that decision of June 6, 1969:

"During the argument, counsel for the plaintiff suggested the court issue a preliminary injunction the same as the temporary restraining order as modified on May 23, 1969. *Defendant's counsel stated that the defendant engaged in the sale and distribution of goods and services entirely through its subsidiaries who have individual trademarks and trade names of their own. He explained that the defendant*

*is essentially a management company and has not used the 'AO' designation in the sale or distribution of goods or services of its subsidiary companies and has no intention to use it in this way in the foreseeable future.* The present plan is to have the subsidiary companies continue to use their own trademarks and trade names." (Emphasis supplied.)

On June 23, 1969, defendant's counsel wrote to this court asking whether or not it could properly distribute the brochures of its subsidiary company, U-Cruise-It International, Inc., which used the symbol "AO" and whether the defendant could use "AO" in other documents if defendant's entire corporate name was also used in the same document. This court advised the defendant's counsel to proceed by way of formal motion if it thought clarification of the injunction was necessary.

The defendant filed no appeal from the entering of this court's preliminary injunction but, on July 23, 1969, moved to clarify the earlier injunction order, again concerned with the use and distribution of its houseboat franchising literature at the subsidiary level.

During the course of that hearing, Ford F. Farabow, another member of the law firm representing the defendant corporation, made several other representations to the court regarding the "U-Cruise-It" brochures:

"These brochures * * * are the *only* advertising materials that U-Cruise-It has that they distributed to their franchisee and prospective franchisees * * *." (Emphasis added.)

Later in the hearing, the court commented upon defendant's subsidiary's use of the U-Cruise-It brochure:

" * * * I might say by way of comment that this brochure, we talked about this as I recall it at the time of the original argument. As I look at it, the only place, and both sides agree on this, the only place that 'AO' is referred to is on the page entitled 'a look at your corporate partner.' There

the words 'AO' and 'AO Industries' are used, when you read the whole page in connection with Associated Oil and Gas Company. It seems to me at least on this reading that I can't see where there could be any confusion developed between the two."

Also during that hearing, the defendant sought guidance regarding its plan to issue a 1969 Interim financial report, using the name "AO Industries, Inc." and exhibiting an "AO" symbol on the front cover as the 1968 report had. The gist of Mr. Farabow's argument in support of using the "AO" symbol on such reports was that this isolated use on the cover of the *holding company's* report has no connection with the sale of goods or services. Without directly passing on defendant's argument, the court later in the hearing stated:

"* * * [A]s far as your corporate reports are concerned, again I don't want to get into being a guiding hand here, but it seems to me that when you look at all that has gone before and all the discussion that have gone before, we know the corporate reports go not only to stockholders but they go to a great number of other people, prospective stockholders, financial institutions and so forth and so on. Now, I am looking at what has been marked before 'Exhibit 3,' Associated Oil and Gas Company 1968 Annual Report, and in great large letters you have 'AO.' Right now I don't know whether that is a violation of the spirit of the letter of the [injunction] or not, but I would be more careful as far as that is concerned."

After hearing argument, this court denied defendant's motion to clarify on August 7, 1969, stating that the original injunction order "sufficiently sets forth the duties and obligations of the defendant in this matter * * *"

In the contempt proceeding on September 19, 1969, plaintiff submitted the affidavit of Edward H. Ragan, a private investigator in its employ. Mr. Ragan relates that he visited the Sunshine State Houseboat Center, Inc.[1] in Miami, Florida and expressed an interest in obtaining information concerning houseboat franchising. On this visit, a representative of Sunshine, Paul Purinton, advised Ragan that the franchising operations were conducted by U-Cruise-It International, Inc., in Pompano Beach, Florida. However, Mr. Purinton gave Ragan three documents: (1) A 1968 annual report of Associated Oil and Gas with a large "AO" configuration on the front cover; (2) A brochure entitled "Don't Just Dream of that Great Holiday;" and (3) A brochure entitled "This Is Your Island in the Sun."

Without undertaking a detailed analysis of the various portions of this literature specifically referring to AO Industries, Inc., it is fair to say that Mr. Purinton's purpose in providing this literature to Mr. Ragan was simply to show that these franchising operations had the solid backing of a company such as Associated Oil and Gas.

Some days later, Mr. Purinton gave Mr. Ragan further information which he received directly from U-Cruise-It International in Pompano Beach.

In response, defendant produced the affidavit of Paul G. Purinton. Mr. Purinton's affidavit substantially corroborates the facts recited in the Ragan affidavit. He did, however, explain why he gave Ragan a copy of the 1968 annual report of Associated Oil and Gas. He said:

"I explained to [Ragan] the relationship between Sunshine State and U-Cruise-It. In the course of this discussion, I picked up a 1968 annual report of Associated Oil and Gas Co., which was mixed in with a stack of magazines on a table in my office and pointed out to Mr. Ragan a description of the relationship between Sunshine State Houseboat Centers, Inc., and U-Cruise-It International, Inc. on

---

1. Sunshine, a subsidiary of the defendant, sells and rents houseboats as a franchisee of U-Cruise-It International, Inc., another subsidiary of defendant.

one of the pages of that report. I did this to emphasize to him the fact that U-Cruise-It was the franchising operation and the people to whom he should be talking."

Purinton further explained:

"I cannot recall whether [Ragan] specifically asked for the annual report or whether I gave it to him as a result of his general request for materials to show to his Key West associates."

Purinton further states:

"The Associated Oil and Gas Co. annual report is not treated as a regular handout piece in our operations, and I am positive that I have given away no more than a half a dozen of these reports, including the one given to Mr. Ragan, since they were published in March or April of this year."

Finally, Purinton states:

"Our houseboats are sold under the names of the manufacturers. Our rental houseboats have both the name of the manufacturer and the name U-Cruise-It International, Inc. affixed to them. All of our sales and rental operations are carried out under the name Sunshine State Centers, Inc. *We do not use the name AO Industries, Inc. in any way except to identify our company as a subsidiary of AO Industries, Inc.*" (Emphasis supplied.)

■ Civil contempt is a remedial measure to sanction the noncompliance with a clear order of a court. The absence of *wilfulness is no defense* to a charge of civil contempt. The defendant's intent or state of mind in doing a prohibited act is not relevant. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). Nevertheless, there must be clear and convincing evidence that there is a violation of the court's order. Hart, Schaffner & Marx v. Alexander's Department Stores, Inc., 341 F.2d 101 (2d Cir. 1965).

■ The court finds that the evidence presented is not sufficient to warrant holding the defendant in contempt. Only one incident was proven in which the defendant's 1968 Annual Report was distributed together with sales brochures of one of its subsidiaries. The court has not considered other distributions of the 1968 Annual Report admitted by Mr. Purinton, because there was no proof that these have occurred since this court's first order.

One of the vices of using the 1968 Annual Report with sales brochures is that the symbol, "AO," is prominently displayed on the outside cover of the annual report. However, in this incident, Mr. Purinton used the report to show the relationship between Sunshine State Houseboat Centers, Inc., U-Cruise-It International and the defendant. No undue emphasis was placed upon the symbol "AO."

By this decision, the court does not mean to approve the use of the annual reports "in any connection with the sale of goods or services." The particular use of the annual reports *together* with sales promotional literature was never mentioned in any of the arguments heard previous to this motion for contempt. Indeed, the court had been led to conclude from prior remarks of counsel for defendant that these annual reports were only given to stockholders, prospective stockholders, banks and other financial interests.

■ The defendant and its subsidiaries should be forewarned that certain actions, although not specifically spelled out in the injunction, may nevertheless be violative of the letter and spirit of this court's order. Lack of specificity will not, in most cases, excuse violations of the order. See McComb v. Jacksonville Paper Co., *supra*.

■ The motion for clarification was denied since the scope of the injunction seemed clear to the court. However, in light of this recent incident, and in order to make sure there is no confusion as to the intent of the injunction, certain additional directions are warranted:

(1) Defendant is directed not to use its annual reports in any connec-

tion with the sales of goods or services.

(2) In designing its 1969 Annual Report, and other literature, the defendant is directed to refrain from using the letters "AO" as a symbol separate from its corporate title written in uniform characters. Defendant may continue to use "AO" as part of its corporate title.

(3) The defendant is directed to refrain from using its corporate title "in any connection with the sales of goods or services." [2]

(4) Defendant shall promptly notify its employees and those persons acting in participation with AO Industries, Inc. and its employees, including subsidiaries, of the order of the court.

So ordered.

---

2. This was fairly intended in the preliminary injunction and should cause no hardship on the defendant since it does not sell "goods and services," and its subsidiaries sell "goods and services" under their own names and trademarks.