UNITED FACTORY OUTLET, INC. & another *vs.* JAY'S
STORES, INC. & others.

Worcester. September 15, 1971. — February 4, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Contempt.*

A corporation may be held in civil contempt through violation of a
court decree by those acting in its behalf even though wilful dis-
obedience of the decree on their part is not shown. [37–38];
TAURO, C.J. concurring in the result, but rejecting the proposition
that there is a distinction between corporations and individuals
with respect to civil contempt. [40]

CONTEMPT PETITION filed in the Superior Court on
January 10, 1970.
The case was heard by *Meagher*, J.
*Francis P. O'Connor* for the defendants.
*Burton Chandler* for the plaintiffs.

CUTTER, J. A decree dated April 6, 1966, set out a pre-
liminary injunction directing eight corporate defendants
"and their respective and several officers, agents, serv-
ants, employees, and assigns, and each of them . . . until
further order of the court, [to refrain] from using in any
form or for any purpose the words 'Mammoth Mart' in
connection with any store or business enterprise owned
or operated by" them in Worcester, subject to conditions
which here need not be set forth in detail. The defen-
dants violated the injunction by advertisements in a
Worcester newspaper on December 5, 12, and 19, 1969.
They assert that the violations were unintentional. Upon
the present contempt petition, a Superior Court judge
adjudged the corporations in contempt, ordered (a) the

payment of a fine of $10 to the plaintiffs, "as there was no evidence of any injury," and (b) reimbursement of the plaintiffs (in the amount of $100) for "expenses . . . in enforcing . . . rights concerning the contempt together with costs." The defendants appealed. The case is before us on the petition for contempt, a report of material facts, and the reported evidence.

The defendants' "sole contention is that there cannot be civil contempt unless there is wilful disobedience of the court's decree." We assume, without deciding, that the evidence discloses no wilful disobedience. Nevertheless, the forbidden words, as the judge found, originated in manuscript prepared by the advertising department of the parent defendant corporation, and the advertisements appeared in the newspapers as so prepared.

1. The distinction between civil and criminal contempts was discussed by Mr. Justice Lummus in *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 347–348. He said (p. 347), "If the penalty is not imposed wholly for the benefit of the aggrieved party, but in part at least is punishment for the affront to the law, the contempt is deemed criminal. If, on the other hand, the power of the court is used only to secure to the aggrieved party the benefit of the decree, either by means of a fine payable to the aggrieved party as a recompense for his loss through disobedience to the decree, or by means of imprisonment terminable upon compliance with the decree, then the contempt is deemed civil." The present contempt was properly treated as civil, for the plaintiffs seek no punishment of the defendants. They attempt merely to obtain the benefit of the 1966 preliminary injunction.

To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command. See *United States Time Corp.* v. *G.E.M. of Boston, Inc.* 345 Mass. 279, 283. The injunction in the decree of April 6, 1966, showed a clear and explicit command. The judge's findings, already mentioned, showed a plain violation of that command. The defendants contend that, in addition, there must be proof that the disobedience is

wilful.   We reject this contention, at least when made in behalf of a corporation.[1]

When a corporation is charged with civil contempt for violating a court order because of the acts of its agents or servants, it is not necessary to show that there was wilful disobedience or intention to violate the order.  It is enough to establish that persons acting for the corporation were responsible for acts or inaction which in fact constituted a violation.  See *McComb* v. *Jacksonville Paper Co.* 336 U. S. 187, 191, where it was said, "The absence of wilfulness does not relieve from civil contempt . . . . Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of [the defendants'] mind . . . . It laid on them a duty to obey specified provisions of the statute.  An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." [2]  To the same effect are numerous other decisions.  *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 349 ("Proof·of good faith and good intentions on the part of" a corporation and two of its officers "would not purge them . . . at least of a civil contempt." Damages [see pp. 346–347] only were assessed).  *Lustgarten* v. *Felt & Tarrant Mfg. Co.* 92 F. 2d 277, 280 (3d Cir.) — "[B]elief, motive, or intent . . . do not excuse" the persons alleged to be in contempt although the circumstance that they "were acting in good faith may be taken

---

[1] No question is now presented concerning what proof of a violation of an injunction is required to constitute criminal contempt.  Compare *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 296–300. Compare also *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 258–261; Williams, Criminal Law, The General Part (2d ed.), §§ 85, 281.

[2] The opinion went on to say (emphasis supplied), "[T]he grant or withholding of remedial relief is not *wholly discretionary* with the judge . . . . The private or public rights that the decree sought to protect are an important measure of the remedy."  In the *McComb* case, however, two justices (Mr. Justice Frankfurter and Mr. Justice Jackson) were of opinion (pp. 195–197) that the order (allegedly violated) was too ambiguous and vague to support contempt proceedings for its asserted violation.  As stated above, the 1966 decree in the present case was unequivocal and clear.

into consideration in mitigation of their offense". *National Labor Relations Bd.* v. *Lawley,* 182 F. 2d 798, 800 (5th Cir.). *Evans* v. *International Typographical Union,* 81 F. Supp. 675, 688 (S. D. Ind.).[3] *Singer Mfg. Co.* v. *Sun Vacuum Stores, Inc.* 192 F. Supp. 738, 741 (D. N. J.) — "The orders of the Court must be obeyed, and to absolve a large or small corporate defendant from its responsibilities simply because *the corporation has ordered compliance but has not sufficiently policed same, would be to open the door for wholesale disobedience of the Court [order]. . . .* Although the salesmen may have been acting on their own in violating the decree, the corporation certainly was reaping the benefits therefrom" (emphasis supplied). On the strength of the authorities cited above, we hold that (a) good faith, (b) absence of wilful disobedience, and (c) lack of intent to violate a decree do not constitute a valid defence for a corporation charged with civil contempt. There was no error in the decree against these corporate defendants.

The defendants contend that certain Massachusetts cases treat wilful disobedience of an injunction as an essential element of a civil contempt. See *Alves* v.

---

[3] For discussion of considerations, in part discretionary, with respect to particular remedial sanctions by way of civil contempt, see *Union Tool Co.* v. *Wilson,* 259 U. S. 107, 112–114; *United States* v. *United Mine Workers of Am.* 330 U. S. 258, 303–304 (where, in discussing the court's discretion in civil contempt with "the purpose . . . to make the defendant comply," it was said that the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired"); Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, 235–236, 241–245, 268–273, 275–282; Notes, 33 U. of Chicago L. Rev. 120, 128–133; 48 Mich. L. Rev. 860, 861–863; 57 Yale L. J. 83, 90–107. See also *Penfield Co. of Cal.* v. *Securities & Exch. Commn.* 330 U.S. 585, 589–593; *Shillitani* v. *United States,* 384 U. S. 364, 370–372. Compare *Parker* v. *United States,* 126 F. 2d 370, 379 (1st Cir.); *S. C.* 135 F. 2d 54, 59–60 (1st Cir.), cert den. 320 U. S. 737; *S. C.* 153 F. 2d 66, 70–71 (1st Cir.), where (per Magruder, J.) it is said, perhaps too inflexibly, that where a plaintiff establishes damage to himself by disobedience of a decree in his favor he "is entitled as of right to an order in civil contempt imposing a compensatory fine." No abuse of whatever discretion exists appears in the present case.

*Braintree*, 341 Mass. 6, 9–12;[4] *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (charges in contempt petition held not sustained) ; *Massachusetts Commn. Against Discrimination* v. *Wattendorf*, 353 Mass. 315.[5]   In each of the cases just cited the charge of civil contempt ran (primarily at least) against individuals, and not against corporations.[6] In the present case no individual is charged with civil contempt.   As all the present defendants are corporations, there is no occasion in this case to review these cases or to reconcile them.   They do not, in any event, apply to the facts before us.

*Decree affirmed with costs of appeal.*

TAURO, C.J. (concurring)   The majority opinion makes the law of the Commonwealth uncertain in an

---

[4] In the *Alves* case (pp. 11–13) town assessors were held not to be in contempt because they had no power or duty to act. Other town officials were not held in contempt because their authority and duty under an ambiguous statute became clear only when this court decided the contempt case. This court declined "to assume that public officers would not carry out their duty under the law once that law has been judicially declared." This, in effect, was equivalent to a decision that no usual contempt remedy or sanction was necessary to assure compliance.

[5] In the *Wattendorf* case, an individual, conducting a real estate office, was charged with contempt. He was found by the trial judge (a) not "intentionally or personally [to have] violated" a decree, somewhat limited in application, which did not in terms run against employees and agents, and (b) to have instructed his employees to refrain from any such violation. A sales manager (not a party to the contempt proceeding), working on commission, engaged in conduct forbidden to the owner of the business by the decree. The trial judge did not adjudge the owner (Wattendorf) in civil contempt. This court, citing decisions from outside Massachusetts, perceived, in the circumstances, no abuse of discretion in the judge's action. There was no finding of any monetary injury to the plaintiff commission as a consequence of the violation. We need not now speculate whether, if the judge had thought there was a violation, he would have been bound, as matter of law, to conclude that a fine or some other usual civil contempt remedy or sanction was required to bring about future compliance by Wattendorf. The judge might reasonably have concluded that future compliance was assured by his pointed admonition to Wattendorf concerning "the need for him to exercise closer supervision over his employees to insure compliance." See authorities cited, fn. 3, *supra*.

[6] We have recently commented that courts may be willing to impose upon a corporation (which can be subjected only to a fine) a penalty or sanction for the acts of another which they would be reluctant to impose upon "a natural person . . . who can suffer imprisonment or ignominy." See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 263–264.

important area involving the power of courts to deal with violations of their decrees through civil contempt. For this reason, I cannot join in the opinion of the court, although I concur in the result reached in today's decision.

The defendants, eight corporations charged with civil contempt for disobeying an injunction, defend on the ground that their conduct was not a *"wilful* disobedience of the court's decree" (emphasis supplied). As authority for their contention, they cite the case of *Massachusetts Commn. Against Discrimination* v. *Wattendorf*, 353 Mass. 315, 317. Also cited are *Alves* v. *Braintree*, 341 Mass. 6, 12, and *Nickerson* v. *Dowd*, 342 Mass. 462, 464. In summarily dismissing the defendants' argument, the majority hold that, in so far as corporations are concerned, courts may find civil contempt without proof of wilful disobedience. The majority refuse to consider the cases relied upon by the defendants, on the ground that "[i]n each of the cases . . . the charge of civil contempt ran (primarily at least) against individuals, and not against corporations." Thus the majority make a distinction between individuals and corporations.

I must respectfully disagree with the majority in their position. As I understand the law of civil contempt, there is but one rule which applies without regard to whether the particular defendant is an individual, a corporation, or some other entity. The rule, simply stated, is that absence of wilfulness will not purge a civil contempt. Inasmuch as the *Wattendorf* case is remarkably similar to the instant case on the facts, the majority have, in my view, created serious and needless uncertainty in not reviewing the *Wattendorf* holding in the light of today's result.[1] I believe the following

---

[1] I agree with the majority, but not for the reason they assign, that we need not review *Alves* v. *Braintree*, 341 Mass. 6, or *Nickerson* v. *Dowd*, 342 Mass. 462. I believe simply that these cases have little, if any, bearing on the question of intent presently before this court. In *Nickerson* v. *Dowd, supra*, at 464, we announced the rule that "[t]o find a violation [of an injunction] there must be a clear and unequivocal

analysis of the facts and the decided cases will sustain my position, and therefore, to avoid obvious inconsistencies in our case law, the *Wattendorf* case should be overruled.

1. Authority and sound principle lead me to reject the distinction which the majority appear to make between corporations and individuals. To my knowledge, no modern court has stated, as the majority now seem to suggest, that natural persons and corporations may be subject to different rules of law in adjudications of civil contempt.

The majority cite various civil contempt cases in an attempt to support their position. The majority fail to note, however, that in each case involving a corporation there were individual defendants who were subject to the same legal principles as the corporate defendant named in the title of the case. *McComb* v. *Jacksonville Paper Co.* 336 U. S. 187, 191 (individuals operating a manufacturing business and their wholly owned sales corporation).[2] *Singer Mfg. Co.* v. *Sun Vacuum Stores, Inc.* 192 F. Supp. 738, 739, 740–741 (D. N. J.) (corporation and two corporate officers). *Godard* v. *Babson-Dow*

---

command and an equally clear and undoubted disobedience." Inasmuch, however, as the defendants did not attempt to excuse their conduct on the basis either that they intended no disrespect or that they had acted in good faith, it clearly appears that the case has no relevance in the present context. *Alves* v. *Braintree, supra,* is more difficult. Yet while the case might at first appear to lend some support to the defendants' contention, I believe that, in so far as it treats with intent in civil contempt, it merely stands for the proposition, not at issue here, that good faith may be considered in mitigation of damages. This interpretation is confirmed by the fact that, although we criticized the disposition as "a harsh result" in view of the officials' good faith reliance upon the advice of counsel, we did not excuse the town's treasurer and selectmen for their disobedience, and we left open the possibility of damages if they did not alter their conduct. See *id.* at 11–13. Damages are not, of course, necessary in every civil contempt proceeding even though the defendant is adjudged in contempt. See 17 Am. Jur. 2d, Contempt, § 114.

[2] In *McComb* v. *Jacksonville Paper Co.* all parties appealed from a decision of the Fifth Circuit affirming a decree of the District Court. At 189–190. The identity of the parties is apparent from the decision in the Court of Appeals. *Jacksonville Paper Co.* v. *McComb,* 167 F. 2d 448, cert. granted sub nom. *McComb* v. *Jacksonville Paper Co.* 335 U.S. 809.

*Mfg. Co.* 319 Mass. 345, 349 (corporation and two corporate officers). Also cited by the majority, but entirely inapposite from their standpoint, are three additional cases: one involving an adjudication of civil contempt against two individual businessmen, one where the defendants were individual trustees of an estate, and one where the defendants were an international labor union and its individual agents.[3]

In *McComb* v. *Jacksonville Paper Co.*, *supra*, the case upon which the majority place most reliance, the Supreme Court reversed a lower court ruling that civil contempt requires "a 'wilful' violation of a decree"[4] (p. 190). Neither the facts nor the language of the case supports the suggestion of the majority that the Supreme Court meant to restrict its holding to corporations charged with civil contempt. Inasmuch as the case involved individual defendants as well as a corporate defendant, it was incumbent upon the court to state explicitly if it meant to treat with only the liability of corporations in civil contempt proceedings. The court, however, stated no limitation in its holding. It said without qualification: "The absence of wilfulness does not relieve from civil contempt." And: "An

---

[3] See, respectively, *Lustgarten* v. *Felt & Tarrant Mfg. Co.* 92 F. 2d 277 (3d Cir.), *National Labor Relations Bd.* v. *Lawley,* 182 F. 2d 798 (5th Cir.), and *Evans* v. *International Typographical Union,* 81 F. Supp. 675 (S. D. Ind.).

[4] Even under Federal standards prevailing prior to *McComb* v. *Jacksonville Paper Co.* the ruling of the lower court was aberrational. See *Wartman* v. *Wartman,* Taney, 362 (4th Cir.) (case involving individual defendant — question of contempt does not depend upon the intention of the party but upon the act done); *Proudfit Loose Leaf Co.* v. *Kalamazoo Loose Leaf Binder Co.* 230 Fed. 120, 132 (6th Cir.) (advice of counsel and good faith conduct do not relieve from liability for a civil contempt, although they may affect the extent of the penalty — with respect to individual defendants); *Telling* v. *Bellows-Claude Neon Co.* 77 F. 2d 584, 586 (6th Cir.) ("Nor is either willfulness or contumaciousness an essential element in civil contempt, however indispensable it may be to a finding of criminal contempt" — with respect to individual defendants); *Metallizing Engr. Co. Inc.* v. *B. Simon, Inc.* 64 F. Supp. 848, 849 (W. D. N. Y.) ("Willfulness is not an essential element in civil contempt" — with respect to corporation and unidentified, other defendants). Compare *Walling* v. *Jacksonville Paper Co.* 69 F. Supp. 599, 608 (S. D. Fla.), and *Jacksonville Paper Co.* v. *McComb* 167 F. 2d F. 448, 450 (5th Cir.).

act does not cease to be a violation . . . of a decree merely because it may have been done innocently." At 191.[5]

The Federal judiciary has uniformly treated the *McComb* doctrine as applicable without regard to whether the charge of civil contempt runs against a natural or an artificial person. In the most recent Federal case, *Doe* v. *General Hosp. of the District of Columbia,* 434 F. 2d 427, 430–431,[6] the petitioners asked the Court of Appeals for the District of Columbia to hold "city and hospital officials in civil contempt" for violation of a preliminary injunction by a doctor at the hospital. As a defence, the respondents asserted that the doctor had acted under a good faith misunderstanding of the scope of the injunction. Relying upon the *McComb* case, Chief Judge Bazelon disposed of the respondents' contention as follows (at 431): "The motion for civil contempt does not turn on the question whether Dr. Ward [the physician] acted in good faith. . . . If petitioners have been deprived of . . . [their rights un-

---

[5] The clear and natural interpretation of *McComb* v. *Jacksonville Paper Co.* 336 U. S. 187, may in fact be that the Supreme Court extended to corporations a rule applicable to individuals. See *National Labor Relations Bd.* v. *Ralph Printing & Lithographing Co.* 433 F. 2d 1058, 1062 (8th Cir.), cert. den. sub nom. *Ralph Printing & Lithographing Co.* v. *National Labor Relations Bd.* 401 U. S. 925, where the Eighth Circuit recently summarized the teaching of the *McComb* case as follows: "If the acts done are clearly in contravention of the court's decree, the intention is of no consequence. The absence of wilfulness does not relieve an *individual* from civil contempt since it is a sanction to enforce compliance with an order of the court and is not dependent on the state of mind of the [defendant]" (emphasis supplied). On the facts, the case involved a corporate defendant.

[6] In addition to *Doe* v. *General Hosp. of the District of Columbia,* see *National Labor Relations Bd.* v. *Lawley,* 182 F. 2d 798, 800 (5th Cir.) (trustees for estate); *Sucrs. De A. Mayol & Co. Inc.* v. *Mitchell,* 280 F. 2d 477, 481 (1st Cir.) (corporation); *National Labor Relations Bd.* v. *Ralph Printing & Lithographing Co.* 433 F. 2d 1058, 1062 (8th Cir.) (corporation); *Babee-Tenda Corp.* v. *Scharco Mfg. Co. Inc.* 156 F. Supp. 582, 587 (S. D. N. Y.) (corporation and corporation president); *Singer Mfg. Co.* v. *Sun Vacuum Stores, Inc.* 192 F. Supp. 738, 740–741 (D. N. J.) (corporation and two corporate officers); *Folk* v. *Standard Business Forms, Inc.* 270 F. Supp. 147, 156 (W. D. N. C.) (corporation and corporation president); *Rosenstiel* v. *Rosenstiel,* 278 F. Supp. 794, 803 (S. D. N. Y.) (individual); *American Optical Corp.* v. *AO Indus. Inc.* 306 F. Supp. 699, 704 (W. D. N. Y.) (corporation).

der the preliminary injunction], then the role of the court on a motion to hold respondents in civil contempt is not to fix blame but to ascertain how the violation occurred, how to prevent a recurrence, and how to repair any damage that has been done."

As far as I have been able to ascertain, whenever an individual, a corporation, or some other entity has made the contention that intent is an element of civil contempt, it has been rejected. Prior to the *McComb* case, the leading American case was *Thompson* v. *Pennsylvania R.R.* 48 N. J. Eq. 105, involving an adjudication of civil contempt against a superintendent of a division of the Pennsylvania Railroad. As his principal defence, the superintendent maintained that he could not be held in contempt unless the court found "a willful and intentional breach of the injunction." At 107. Vice Chancellor Pitney of the Court of Chancery rejected the argument, concluding as follows: "[Breach of an injunction] consists in doing the forbidden thing, and not in the intention with which it is done." At 109.[7] To the same effect are other State cases both before and after the *McComb* case. See *Catsman* v. *Flint*, 18 Mich. App. 641, 646, where the defendant city appealed from an order adjudging it in civil contempt for disobeying a writ of mandamus. As a defence, the city attorney

---

[7] The reasoning of the Vice Chancellor in *Thompson* v. *Pennsylvania R. R.* was, in full, as follows (at 108–109) : "[I]f A be ordered to pay a sum of money to B, and, being able so to do, fails to make the payment, of what consequence is it to B what may have been the motive which induced the failure, or what may have been the state of A's mind toward the court? And if B brings the breach of its order to the attention of the court, and asks that its process do issue against A therefor, must his application be refused if A can satisfy the court that he entertained no disregard for the court, and did not mean to set its order at defiance? So in the case of a nuisance: if A be enjoined from so using a dam on his land as to flood B's land, and fails to observe the injunction, and B's land is flooded thereby, in any and all such cases, it seems to me that it is no answer to the complaint of the injured party to say that the party inflicting the injury meant no disrespect to the court. The injury suffered by the complaining party is neither increased nor diminished, nor in any way affected by the state of mind towards the court of the party inflicting the injury; and the breach of the injunction consists in doing the forbidden thing, and not in the intention with which it is done."

argued that he had "in good faith" held the view that court rules "granted an automatic stay . . . , that such a good faith belief negatives any contumaciousness on his part, and that therefore the contempt order should be nullified." The court concluded as follows: "[T]his defense is not valid, for where as here the essential purpose behind the contempt order is to compel obedience to the court's injunction, an intent to defy a court, or a spirit of defiance, is not an essential element of a finding of contempt." See also *Clear Lake Water Co.* v. *Superior Court of Mendocino County,* 33 Cal. App. 2d 710, 716 ("[G]ood intentions [on the part of the defendant corporation] are no defense") ; *Bird* v. *Johnson,* 234 Ind. 555, 558 ("It is well settled that whether or not . . . [the individual defendants] were guilty of [civil] contempt does not depend upon their intentions or motives, but upon the acts done by them") ; *Wilcox Silver Plate Co.* v. *Schimmel,* 59 Mich. 524, 528 ("Neither the belief, motive, nor intent with which the writ is disobeyed in any manner varies the responsibility of the party who violates it; on the contrary, they are liable for its violation in whatever capacity or from whatever motives they may have acted" — with respect to individual defendants).

If the matter is considered on principle and apart from authority, the conclusion is the same. The rule that intent is not an element of civil contempt is a direct consequence of the separate functions of criminal and civil contempt. Since the purpose of civil, as distinguished from criminal, contempt is primarily remedial and not punitive, there is no requirement that the complainant show an intention on the part of the defendant to defy the court or to degrade its process. It is enough if he shows that the defendant violated the terms of an unambiguous decree. *McComb* v. *Jacksonville Paper Co.* 336 U. S. 187, 191. *Doe* v. *General Hosp. of the District of Columbia,* 434 F. 2d 427, 431 (D. C. Cir.). *Catsman* v. *Flint,* 18 Mich. App. 641, 646. *Thompson* v. *Pennsylvania R.R.* 48 N. J. Eq. 105, 108. See 7 Am. & Eng.

Encyc of Law (2d ed.) 74–77.[8]   The function of civil
contempt further dictates that liability cannot depend
upon the legal status of the person charged with com-
mitting the contempt.   The focus of a civil contempt
proceeding is upon the complainant since the object of
the proceeding is to secure him the full benefits of his
rights under the court's decree.   See *Gompers* v. *Bucks
Stove & Range Co.* 221 U. S. 418, 441, 448; *United States*
v. *United Mine Workers of Am.* 330 U. S. 258, 303–304;
*Penfield Co. of Cal.* v. *Securities & Exch. Commn.* 330
U. S. 585, 590; Moore's Federal Practice, par. 65.02[4].
For this reason, the legal status of the person who vio-
lates a decree is of no consequence as long as he is an
entity subject to the court's in personam jurisdiction.
*Alemite Mfg. Corp.* v. *Staff,* 42 F. 2d 832, 833 (2d Cir.).
See Moore's Federal Practice, par. 65.13.

It is totally inconceivable that the liability of a person
committing a civil contempt should depend upon whether
he is an individual, a corporation, or an unincorporated
association such as a labor union.   Courts have con-
sistently refused to treat such status as in any way
affecting the responsibility of a party who violates a
court order.   See generally 17 C. J. S., Contempt,
§§ 33–34.   As to corporations, see *Jones* v. *Boston Mill
Corp.* 4 Pick. 507, 510–511; *Commonwealth* v. *Hudson,*
315 Mass. 335, 346–347 (municipal corporation); *State*
v. *Public Works of Camden,* 58 N. J. L. 536, 540;
*People* v. *Albany & Vt. R.R.* 12 Abb. Pr. Reports, 171,
172–175 (N. Y. Supr. Ct.); 17 Am. Jur. 2d, Contempt,
§ 11.[9]   The general principle behind this doctrine was

[8] See also Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev.
183, 220; notes, 32 Ind. L. J. 514, 516, 520–524; comments, 48 Mich.
L. Rev. 860, 869; 33 U. of Chicago L. Rev. 120, 123–125. Cf. High on
Injunctions (4th ed.) § 1418.

[9] As to labor unions, see *United States* v. *United Mine Workers of
Am.* 330 U. S. 258, 293–295; *United States* v. *Brotherhood of R.R.
Trainmen,* 95 F. Supp. 1019 (D. D. C.); *American Zinc Co. of Ill.* v.
*Vecera,* 338 Ill. App. 523, 530–531;*Arnold* v. *National Union of
Marine Cooks & Stewards Assn.* 42 Wash. 2d 648, 653–654. Cf. *Oil
Workers Intl. Union* v. *Superior Court of Contra Costa County,* 103
Cal. App. 2d 512, 568–572 (involving criminal contempt); *State* v.
*Local Union 5760, United Steelworkers of Am.* 172 Ohio St. 75, 84–85
(involving criminal contempt).

well stated in *Pilgrim Real Estate, Inc.* v. *Superinten-dent of Police of Boston,* 330 Mass. 250, 252, where we said: "A corporation . . . is liable for injuries caused to another . . . *upon similar grounds as natural persons and to the same extent"* (emphasis supplied).

2. There is no doubt in my mind that the case of *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, decided in 1946, establishes the same rule in Massachusetts for civil contempt as governs the Federal courts and all State jurisdictions which have considered the question. In the *Godard* case, there was an adjudication of civil contempt where, as I have indicated, the parties respondent were a corporation and two of its officers. The evidence showed that the respondents over a period of approximately five months had violated a final decree restraining them from continuance of a nuisance. This court held that the judge below had properly excluded evidence tending to show that the respondents had acted with good intentions toward the petitioner.[10]   In support of its holding, this court stated the following rule (at 349): "Proof of good faith and good intentions on the part of the respondents *would not purge them of contempt, at least of a civil contempt"* (emphasis supplied).[11]   Significantly, this court appears to have based its holding on the distinctive functions of civil and criminal contempt. See p. 347.   In any event, the presence of individual respondents as well as corporate respondent indicates that we made no distinction between corporations and individuals for purposes of civil contempt.

3. Having stated the rule which should apply here, I now consider the bearing of today's decision upon *Mas-*

---

[10] The respondents in the *Godard* case wished to show good faith on their part through evidence that the petitioner had rejected an offer by the respondents to move his machinery to a part of his premises where the nuisance maintained by the respondents would not interfere . with his business. At 349.

[11] Compare *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449, 453 (rule as to intent in criminal contempt proceeding).

*sachusetts Commn. Against Discrimination* v. *Watten-dorf,* 353 Mass. 315. As a preliminary matter, the facts in the instant case and in the *Wattendorf* case are summarized.

The defendants in the instant case were enjoined from using the words "Mammoth Mart" for any purpose in connection with any business owned or operated by them in the city of Worcester unless some distinguishing words were interposed between "Mammoth" and "Mart." The defendants violated the injunction through the publication of nonconforming advertisements in the Worcester Evening Gazette on December 5, 12 and 19, 1969. To support their contention that the violation was not wilful, the defendants allege that the evidence shows the following: Irving Getz was the corporate officer in the defendant corporations who was responsible for ensuring compliance with the injunction. On behalf of the defendants, Getz instructed the various employees and an agent of the corporations to publish only advertisements conforming to the terms of the court's decree. Among those so instructed were all personnel in the defendants' advertising department, the manager of their Worcester store, and the advertising representative of the Worcester paper which published their advertisements. Despite these precautions, and without the corporate officer's knowledge, the violation occurred. The plaintiffs did not offer any evidence which seriously contradicted this version of the events.

In the *Wattendorf* case, the respondent was the sole proprietor of a real estate business with an office in Dorchester for the sale and rental of residential properties. His sales manager in charge of the Dorchester office was one Coleman. The petitioner, Massachusetts Commission Against Discrimination, appealed from a decree dismissing its petition to have the respondent adjudged in contempt of court for violation of a decree which ordered him (1) to "cease and desist and in the future refrain from making any inquiry, distinction, discrimination or restriction on account of color or race in the

conduct of any phase of respondent's [real estate] business"; and (2) to order all persons who acted for him and on his behalf to cease and desist from discriminating, and so forth. The trial judge found that the respondent instructed his employees in accordance with the court's order, but that nonetheless, unbeknownst to the respondent and contrary to his instructions, Coleman violated the decree by refusing a Negro rental information on account of his race. Inasmuch as Coleman was sales manager of the respondent's office, he was clearly acting within the scope of his authority and on behalf of Wattendorf when he committed the prohibited discrimination.[12]

A comparison thus shows no significant differences between the facts in this case and those in the *Wattendorf* case. The similarities, on the other hand, are striking: in both cases, an employer instructed his employees to obey the court's order but, in spite of this precaution, a violation occurred without the knowledge or participation of the employer. In each instance, the complainant directed his petition to adjudge in civil contempt against the employer rather than against the employee or employees actually violating the court's order. While the majority today find no error in the decree adjudging the present defendants in civil contempt, this court in the *Wattendorf* case, under similar facts, upheld dismissal of the contempt petition on the basis of the Superior Court's ruling that the petitioner had not shown "a wilful violation." The court concluded (at 317): "There was no abuse of discretion, and without that

---

[12] This conclusion necessarily appears from an examination of the original record in *Massachusetts Commn. Against Discrimination* v. *Wattendorf,* 353 Mass. 315. It is evident that Coleman had the "responsibility for showing people apartments," and that he had the authority to "decide which type of apartment a particular person might like to see or might not like to see. . . . [His] discretion include[d] deciding whether to show a particular apartment to a person or whether not to." This court takes judicial notice of its records. *Matter of Welansky,* 319 Mass. 205, 210. *Assessors of Lawrence* v. *Arlington Mills,* 320 Mass. 272, 273–274.

United Factory Outlet, Inc. *v.* Jay's Stores, Inc.

essential element the decree dismissing the petition must be affirmed." [13]

The *Wattendorf* case can be distinguished only on the basis that the respondent Wattendorf was doing business as an individual while the defendants in the present case are corporate entities. As I have shown, however, this difference can have no legal significance. Inasmuch as there is only one rule for individuals and corporations, the conclusion is inescapable that the *Wattendorf* case is at odds with today's result. The record in the *Wattendorf* case bears out this view. After stating the trial judge's subsidiary findings, this court held conclusive the judge's ultimate finding of fact: "I do not find that Wattendorf intentionally or personally violated the decree by discriminating among applicants for housing on the basis of color or race. The evidence falls short of proof of 'the clear and undoubted disobedience which is required for the foundation of a petition for contempt' " (citations omitted). Since the individual who actually committed the discrimination was the defendant's sales manager and was acting within the scope of his employment, the defendant was unquestion-

---

[13] Even apart from the issue presently before us, *Massachusetts Commn. Against Discrimination* v. *Wattendorf* should be overruled in so far as it takes the view that a trial judge has discretion whether to hold a party in civil contempt *once a violation of an injunction has been established.* The court was clearly in error. Admittedly, there is an area of discretion as to whether, in the first instance, injunctive relief will be granted. Once an injunction has issued, however, the correct rule is that "legal discretion . . . does not extend to a refusal to apply well-settled principles of law to a conceded state of facts [in a civil contempt proceeding brought to enforce the injunction]." Discretion is limited to the factual determination whether the injunction has been violated and to what extent the petitioner was injured and requires relief. *Union Tool Co.* v. *Wilson,* 259 U. S. 107, 112. *McComb* v. *Jacksonville Paper Co.* 336 U. S. 187, 191. *Parker* v. *United States,* 153 F. 2d 66, 70 (1st Cir.). See *United States* v. *United Mine Workers of Am.* 330 U. S. 258, 303–304 (discretion lies in determination of appropriate relief for ·the petitioner once there is a finding of civil contempt). For these reasons, I am concerned with the statement of the majority (at fn. 3) that "[n]o abuse of whatever discretion exists appears in the present case." I wish to make clear that I agree with the statement only as it applies to the remedy granted the plaintiffs and not as it may apply to the finding of civil contempt against the defendants. The plaintiffs here were clearly entitled to this finding under settled principles of law.

ably chargeable under familiar principles of law with the discrimination perpetrated in violation of the injunction. See *Gillette Safety Razor Co.* v. *Wolf*, 180 Fed. 776, 777 (S. D. N. Y.) ; *Babee-Tenda Corp.* v. *Scharco Mfg. Co. Inc.* 156 F. Supp. 582, 587 (S. D. N. Y.).[14] It was thus possible for the trial judge to find as he did, and for this court to uphold him, on only one basis: the employer's innocent state of mind was a valid defence to the charge of civil contempt.

To the extent that the *Wattendorf* case stands for this proposition, it is plainly contrary to the great weight of authority and to the rule which we announced in *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, and which, despite the majority's disclaimers, we follow in the instant case. In order to eliminate this obvious inconsistency in our decisions, I believe the proper course would be forthrightly to state that *Massachusetts Commn. Against Discrimination* v. *Wattendorf, supra,* is no longer the law of this Commonwealth. Such a course would avoid the danger of confusion implicit in the majority's erroneous attempt to limit the present holding to corporations.

Such a course would also be based on logic and sound reasoning. It is irrational to argue that an employer, whether incorporated or unincorporated, should be able to avoid his responsibility for compliance with an injunction merely by issuing instructions to his employees. Of what legal consequence is it that Jay's Stores, Inc., the principal defendant in this case, is a corporation rather than a natural person? Or that the respondent in the Wattendorf case conducted his business as a sole proprietorship rather than as a corporation? Moreover, regardless of what legal form a business takes, the argument that the responsible individual or corporation should not be held in contempt where an employee

---

[14] See also *Telling* v. *Bellows-Claude Neon Co.* 77 F. 2d 584 (6th Cir.) ; *Doe* v. *General Hosp. of the District of Columbia,* 434 F. 2d 427, 430–431 (D. C. Cir.). Cf. *Singer Mfg. Co.* v. *Sun Vacuum Stores, Inc.* 192 F. Supp. 738, 741 (D. N. J.).

or other agent violates the court's order without the employer's knowledge and contrary to his instructions must give way to the absolute necessity of a power of the court to enforce its injunctions. Sound policy surely dictates that, whenever a violation by an employee enures to the benefit of his employer,[15] the court should have the power to hold the person responsible in civil contempt, regardless of what his state of mind may have been, regardless of what precautions he may have taken, and regardless of the legal form which he has chosen for his business. To hold otherwise would invite evasive tactics and undermine the authority of courts to enforce their decrees.

4. I fully recognize that "important policy considerations militate in favor of continuity and predictability in the law." *Boys Mkts. Inc.* v. *Retail Clerks Union, Local 770,* 398 U. S. 235, 240. Nonetheless, we cannot afford a slavish adherence to stare decisis nor can we leave unexplained and uncorrected such infrequent lapses from sound principle as all courts suffer in the course of case-by-case adjudication. As Justice Frankfurter wrote for the Supreme Court, "[S]tare decisis is a principle of policy and not a mechanical formula of adherence to the

---

[15] My conclusion that Wattendorf and other unincorporated entities must be held responsible for the conduct of their employees is not based necessarily on the doctrine of respondeat superior but rather on a rule that the obligation to obey a court order is nondelegable but remains at all times the responsibility of the person to whom the order has been directed. See *Singer Mfg. Co.* v. *Sun Vacuum Stores, Inc.* 192 F. Supp. 738, 741 (D. N. J.), where in the context of a civil contempt proceeding, the District Court quoted Judge Cardozo: "The employer 'does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. . . . It is not an instance of respondeat superior. It is a case of the non-performance of a nondelegable duty' " (cited from *People, ex rel. Price* v. *Sheffield Farms-Slawson-Decker Co.* 225 N. Y. 25, 30). See also *Regal Knitwear Co.* v. *National Labor Relations Bd.* 324 U. S. 9, 14 (There is a common law doctrine, holding in essence that the "[d]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding"); *Babee-Tenda Corp.* v. *Scharco Mfg. Co. Inc.* 156 F. Supp. 582, 587 (S. D. N. Y.). It hardly seems necessary to point out the complex problems which would arise if an employer (not incorporated) could avoid contempt because the court order was violated by an employee or agent. The opportunities for evasive tactics under such conditions are self-evident.

latest decision, *however recent and questionable,* when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience" (emphasis supplied). *Helvering* v. *Hallock,* 309 U. S. 106, 119. For these reasons, I would strike down the erroneous principle of law enunciated in the *Wattendorf* case, and further, I would make clear that this court will not permit any erosion of the power of our courts to enforce their orders and decrees.